UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

SAI BROKEN ARROW C, LLC, d/b/a         )
Speedway Chevrolet,                    )
                                       )
           Plaintiff,                  )
                                       )
v.                                     )  Case No. 09-CV-0455-CVE-FHM
                                       )
GUARDIAN EMERGENCY VEHICLES, INC.,     )
et al.,                                )
                                       )
           Defendants.                 )

**OPINION AND ORDER**

Now before the Court is Guardian Emergency Vehicles, Inc., J. Kennith Brown, and James Agnew's Motion to Dismiss, or in the Alternative, Motion to Transfer (Dkt. # 16). Defendants ask the Court to dismiss plaintiff's claims for lack of subject matter jurisdiction or improper venue or, in the alternative, to transfer this case to the United States District Court for the Northern District of Alabama.

**I.**

Plaintiff SAI Broken Arrow C, LLC, d/b/a Speedway Chevrolet (Speedway) is an Oklahoma limited liability company with its principal place of business in Broken Arrow, Oklahoma. As part of its business operations, Speedway sells vehicle chassis to upfitters who build custom vehicle bodies for sale to an end purchaser. Guardian Emergency Vehicles, Inc. (Guardian), an Alabama corporation with its principal place of business in Huntsville, Alabama, builds custom ambulance chassis for customers on a nationwide level, and Guardian purchases chassis from Speedway. Guardian places an order with Speedway, and Speedway orders a chassis from the "first-stage" manufacturer, General Motors Corporation (General Motors), for direct delivery of the chassis to

Guardian. General Motors sends a first-stage manufacturer's certificate of origin to Speedway, and Speedway maintains the certificate of origin until it receives payment from Guardian. Upon completion of its work, Guardian issues its own second-stage certificate of origin, and the end purchaser must take both certificates of origin to the appropriate state agency to obtain a vehicle title in its name.

Speedway alleges that Guardian has ordered 30 chassis since June 2007 and has failed to pay for six of the chassis. Speedway alleges that the chassis have been used for ambulance bodies sold to end purchasers who have obtained titles for the vehicles from a state licensing or title agency. The complaint provides the date Guardian ordered each of the six chassis from Speedway and each chassis' identification number. See Dkt. # 1, at 4-8. Speedway claims that Guardian represented that each of the six chassis was still in Guardian's possession, but Guardian knew that the chassis had already been sold to the end purchaser. Guardian allegedly made telephone calls and sent e-mails to Speedway stating that Guardian was attempting to obtain financing from a "floor plan lender" for the six chassis, but Guardian knew that these statements were false.

On March 23, 2009, James Agnew, Vice President of Sales and Operations Manager for Guardian, allegedly told Speedway that he had bought out the other two owners of Guardian, J. Kennith Brown and Don Sowell. Id. at 9. Agnew subsequently sent an e-mail claiming that he had Chassis No. 4233 and 9842 in his possession, but Speedway claims that Agnew's statements were false. Id. On June 3, 2009, Agnew allegedly contacted Speedway and stated that he had received financing for the six chassis from a finance company. He faxed a copy of a check to Speedway for the six chassis as evidence that he would pay for the chassis, but Speedway alleges that he never sent the check to Speedway. Id. Agnew also asked Speedway to fax copies of the first-stage certificates

of origin for the six chassis, and Speedway complied with the request. Speedway claims that Guardian intended to use the certificates of origin to fraudulently obtain financing for the chassis, even though Guardian had allegedly sold the completed vehicle bodies to end purchasers. Speedway also claims that Guardian provided copies of the certificates of origin to the end purchasers.

By June 2009, Speedway had not received payment for the six chassis and attempted to repossess the chassis from Guardian. However, the chassis were not on Guardian's lot and Speedway claims that Guardian had already sold the completed chassis to the end purchasers. Speedway states that it has investigated the matter and learned that title to Chassis No. 2948, 2858, 4233, 1198 and 9842 has been transferred from Guardian to a purchaser. Guardian believes that title to Chassis No. 1407 has also been transferred to an unidentified purchaser, because this chassis is no longer in Guardian's possession.

Speedway alleges a civil claim under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. (RICO), and state law claims of breach of contract and conversion, against Guardian, Agnew, Brown and Sewell. Speedway also alleges a RICO claim and a state law conversion claim against the Mayes Emergency Services Trust Authority (MESTA) and other unknown end purchasers, and a negligence claim against unidentified state agencies that issued certificates of title to the end purchasers.

## II.

Defendants Guardian, Agnew, and Brown (defendants) seek dismissal of the case for improper venue or to transfer the case to the Northern District of Alabama. They also seek dismissal

3

of plaintiff's RICO claim against them for failure to state a claim.[1]  Plaintiff responds that venue is proper under the general venue statute, 28 U.S.C. § 1391, or RICO's specific venue provision, 18 U.S.C. § 1965, and that transferring venue to the Northern District of Alabama would simply shift the inconvenience of litigating this case from defendants to plaintiff.  Plaintiff also argues that it has adequately pled a RICO claim against Guardian, Brown, Agnew, and Sowell.

**A.**

Defendants argue that the events giving rise to this case occurred in Alabama, and there is no basis for this Court to exercise venue under § 1391.  Defendants argue that they are located in Alabama and the chassis were sent to Alabama, and the evidence and witnesses are located in the Northern District of Alabama.  Plaintiff responds that defendants are overlooking many of its factual allegations, and venue is not improper simply because this forum would present an inconvenience to certain parties.

Once an issue as to venue has been raised, the plaintiff bears the burden to show that venue is proper.  McCaskey v. Continental Airlines, Inc., 133 F. Supp. 2d 514, 523 (S.D. Tex. 2001).  When venue is challenged under Rule 12(b)(3) and the parties have not requested an evidentiary hearing, the plaintiff must make only a prima facie showing that venue is proper in its chosen forum.  Mitrano v. Hawes, 377 F.3d 402 (4th Cir. 2004); Delong Equipment Co. v. Washington Mills Abrasive Co., 840 F.2d 843, 845 (11th Cir. 1988).

---

[1]  Defendants also argue that the case should be dismissed for lack of subject matter jurisdiction if this argument is successful.  They assert that federal question jurisdiction will be lacking if the Court dismisses plaintiff's RICO claims.  However, plaintiff has asserted separate RICO claims against defendants and MESTA, but MESTA has not filed a motion to dismiss.  Thus, even if the Court dismisses the RICO claim against Guardian, Brown, Agnew and Sowell, the RICO claim against MESTA will remain pending and the Court will still have subject matter jurisdiction over this case.

Under 28 U.S.C. § 1391(b), a civil action "wherein jurisdiction is not founded solely on diversity of citizenship may . . . be brought only in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ." Venue may be proper in more than one district in which a substantial part of the events giving rise to the claim occurred. Wilson v. Qorvis Communications, LLC, 2007 WL 4171567 (W.D. Okla. 2007). The plaintiff does not have to establish that his chosen venue "has the most substantial contacts to the dispute; rather, it is sufficient that a substantial part of the events occurred [here], even if a greater part of the events occurred elsewhere." Nat'l Council on Compensation Ins. Inc. v. Caro & Graifman, P.C., 259 F. Supp. 2d 172 (D. Conn. 2003) (quoting Indymac Mortgage Holdings Inc. v. Reyad, 167 F. Supp. 2d 222, 237 (D. Conn. 2001)). The Court must determine whether "the forum activities played a substantial role in the circumstances leading up to the plaintiff's claim. If the selected district's contacts are 'substantial,' it should 'make no difference that another's are more so, or the most so.'" Crowe & Dunlevy, P.C. v. Stidham, 609 F. Supp. 2d 1211, 1221 (N.D. Okla. 2009).

Defendants assert two primary arguments in an attempt to show that venue in this Court is improper.[2] First, they argue that the events giving rise to this case occurred in Alabama because defendants are located in Alabama and the alleged purchases and communications were initiated in

---

[2] Defendants mention the doctrine of forum non conveniens, but it appears that their argument is actually intended to be based on improper venue. Defendants provide no legal authority concerning the application of forum non conveniens, and defendants' mention of forum non conveniens overlaps with their discussion of the factors relevant to transfer of venue under 28 U.S.C. § 1404. Dkt. # 16-2, at 1-3. The Court will treat defendants' motion as a motion to dismiss for improper venue or, in the alternative, to transfer venue. This approach also provides the Court greater discretion to dismiss or transfer the case due to improper venue and, if the motion is not granted under Rule 12(b)(3), it would not satisfy the more stringent requirements of the common law doctrine of forum non conveniens. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 264-65 (1981).

5

Alabama. Second, defendants argue that the Court will be obligated to apply Alabama law, and an Alabama federal court would have greater expertise applying Alabama law.[3] However, plaintiff has shown that a substantial part of the activities giving rise to the case occurred in the Northern District of Oklahoma and has carried its burden to show that venue in this district is proper. Guardian purchased the subject chassis from Speedway and knew that it was conducting business with a company in Broken Arrow, Oklahoma. Guardian and its officers initiated communications with Speedway on several occasions and allegedly made fraudulent statements to Speedway. Speedway claims that it relied on these statements and a completed fraud was committed in Oklahoma, even if the statements, e-mails, or communications originated in Alabama. Speedway also points out that Guardian allegedly sold one of the subject chassis to MESTA, and this defendant is located in the Northern District of Oklahoma. The Court finds that plaintiff has met its burden to show that a substantial part of the activities giving rise to the case occurred in the Northern District of Oklahoma and venue is proper in this district.

Defendants also argue that the Court should transfer venue to the Northern District of Alabama, because that venue would be more convenient for the defendants located in Alabama. Under 28 U.S.C. § 1404(a), a court may transfer a case to any judicial district in which it could originally have been filed "[f]or the convenience of parties and witnesses." In deciding whether transfer is appropriate, the Tenth Circuit has directed district courts to consider the following factors: (1) "the plaintiff's choice of forum;" (2) "the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses;" (3) "the cost of

---

[3] The choice of law issue will be addressed in connection with defendants' alternative motion to transfer venue, but does not relate to whether venue is proper under § 1391.

making the necessary proof;" (4) "questions as to the enforceability of a judgment if one is obtained;" (5) "relative advantages and obstacles to a fair trial;" (6) "difficulties that may arise from congested dockets;" (7) "the possibility of the existence of questions arising in the area of conflict of laws;" (8) "the advantage of having a local court determine questions of local law;" and (9) "all other considerations of a practical nature that make a trial easy, expeditious and economical." Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F.2d 1509, 1516 (10th Cir. 1991) (quoting Tex. Gulf Sulphur Co. v. Ritter, 371 F.2d 145, 147 (10th Cir. 1967)) (internal quotation marks omitted). When a party files a motion to transfer venue, the moving party has the burden to prove inconvenience to the parties and witnesses. Rivendell Forest Prods., Ltd., v. Canadian Pacific Ltd., 2 F.3d 990, 993 (10th Cir. 1993). Unless the moving party carries its burden to prove inconvenience to the parties and witnesses and the balance is "strongly" in favor of the moving party, the plaintiff's choice of forum should not be disturbed. Scheidt v. Klein, 956 F.2d 963, 965 (10th Cir. 1992).

Defendants argue that the Northern District of Alabama would be more convenient for four of the defendants and much of the evidence is located in that venue, and the Chrysler Credit factors favor transfer of venue to the Northern District of Alabama. However, plaintiff selected the Northern District of Oklahoma as the forum for this case, and its decision is entitled to significant deference unless defendants can show that other factors weigh strongly in favor of transfer to another district. Defendants argue that they are located in Alabama and their testimony will be critical evidence. They claims that the specific acts giving rise to plaintiff's claims occurred in Alabama and, under Oklahoma choice of law rules, Alabama law will apply to plaintiff's claims. They also argue that the alleged fraudulent transfers of the six chassis to end purchasers occurred in Alabama.

7

Defendants present a one-sided view of plaintiff's factual allegations, and they have not carried their burden to show that venue should be transferred to the Northern District of Alabama. While the Northern District of Alabama would be more convenient for Guardian, Agnew, Brown, and Sowell, it would be substantially more inconvenient for plaintiff and MESTA to litigate in that district. Unlike the cases cited by defendants, plaintiff has strong ties to this district and its choice of forum is entitled to deference. See Pendarvis v. Conocophillips Pipe Line Co., 2009 WL 104973 (E.D. Okla. Apr. 17, 2009) (the plaintiff did not reside in the forum and no events occurred in the forum, and the plaintiff's choice of venue was not entitled to deference); Dody v. Brown, 659 F. Supp. 541 (W.D. Mo. 1987) (plaintiff did not conduct business in Missouri and no events giving rise to the case occurred in Missouri, and district court transferred venue to Northern District of Florida). Although defendants generally argue that "the Northern District of Alabama . . . is home to the grand majority of potential witnesses," defendants do not identify any witnesses, other than themselves, located in Alabama. Dkt. # 16-2, at 6. On the contrary, plaintiff has identified at least seven potential witnesses who reside in this district. Dkt. # 25, at 16. Thus, defendants have not shown that the Northern District of Alabama will be a substantially more convenient forum for the parties and witnesses, and this factor does not favor transfer of venue.

Defendants also argue that the Court will be required to apply Alabama law to plaintiff's state law claims and a district court in Alabama will have greater expertise with Alabama law. However, defendants' choice of law argument is also based on its one-sided view that the events occurred in Alabama, and it is not certain that Alabama law will apply to plaintiff's state law claims. Even assuming that Alabama law does apply, this is not an obstacle to trying this case in the Northern District of Oklahoma. Defendants do not suggest that Alabama law as to fraud or

8

conversion is unclear or complex, and defendants have not identified any difficulty caused by the potential application of Alabama law. Defendants have not shown that it is likely that Alabama law will apply to plaintiff's state law claims and choice of law is not an issue as to plaintiff's RICO claims, and the Court finds that this factor does not support transfer of this case to the Northern District of Alabama.

Considering the other Chrysler Credit factors, the Court finds no basis to transfer this case to the Northern District of Alabama. There will be some additional cost to defendants if this case is tried in this Court, but transfer would simply result in shifting the burden of additional expenses to plaintiff and MESTA. Defendants assert that Guardian is a small company and plaintiff is better able to bear the cost of litigation in another district, but defendants provide no factual support for this argument. Dkt. # 26, at 6. The only Alabama witnesses identified by defendants are themselves, and there is no difficulty in ensuring their presence at trial. The Court does not have a congested docket, and there is no reason that the case will be delayed if the parties are required to litigate in this district. The possibility that defendants will incur some additional expense by litigating the case in this Court is not sufficient to tip the balance strongly in favor of transfer to another forum, and plaintiff's request to transfer venue to the Northern District of Alabama should be denied.

**B.**

Defendants ask the Court to dismiss plaintiff's RICO claim against them, because plaintiff has not pled its claim with particularity as required by Fed. R. Civ. P. 9(b). Plaintiff responds that it has pled specific factual allegations concerning alleged fraudulent statements by defendants, and it has stated a RICO claim against defendants.

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 562. Although decided within an antitrust context, the Supreme Court recently held that Twombly "expounded the pleading standard for all civil actions." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to claimant. Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee County Bd. Of County Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

Under 18 U.S.C. § 1962(c), it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." To survive a motion to dismiss, the Tenth Circuit has held that

a plaintiff must allege that "the defendants (1) participated in the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Tal v. Hogan, 453 F.3d 1244, 1269 (10th Cir. 2006). To have standing to allege a RICO claim, a plaintiff must have been "injured in his business or property by the conduct constituting the violation." Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985). Alleged predicate acts based on fraud must be pled with particularity under Rule 9(b). Cayman Exploration Corp. v. United Gas Pipe Line Co., 873 F.2d 1357, 1362 (10th Cir. 1989). However, a plaintiff "must plead damages to business or property in a manner consistent with [Fed. R. Civ. P. 8] to show standing and is not required to plead with the particularity required by Rule 9(b)." Robbins v. Wilkie, 300 F.3d 1208, 1211 (10th Cir. 2002).

The Court will first consider whether plaintiff has sufficiently alleged an injury to business or property from defendants' conduct and has standing to proceed with its RICO claim against defendants. Plaintiff generally alleges that it "is a person injured in its business or property by reason of a violation of 18 U.S.C. § 1962 and may sue therefore in this Court and recover threefold the damages sustained and the costs of this suit including reasonable attorney's fee pursuant to 18 U.S.C. § 1964(c)." Dkt. # 1, at 13-14. Plaintiff claims that it "suffered outrage, and severe economic damages plus attorney fees wrongfully sustained" as a result of defendants' conduct. Id. at 13. More specifically, plaintiff also alleges that:

> The series of misrepresentations listed above were made by Agnew, Brown, and Sowell to Speedway with the intent that Speedway rely on these misrepresentations so that:
>
> a. Speedway would not seek to verify the status of the Chassis and thus learn that the Chassis had been transferred to third parties; and
>
> b. Speedway would continue to sell Guardian additional chassis to keep the fraudulent scheme going.

11

Id. at 11. These allegations satisfy plaintiff's duty to generally allege that it has suffered damages to its business or property from defendants' conduct. Defendants confuse plaintiff's burden to allege fraud with particularity and plaintiff's burden to generally allege damages. See Dkt. # 26, at 7. Plaintiff does not have to allege "how and to what degree . . . it was harmed by the alleged fraudulent conduct" as defendants argue, see id. at 8, and the complaint adequately alleges that plaintiff has suffered an injury to business or property from defendants' conduct and the nature of that injury.

The next issue raised by defendants is whether the complaint states a RICO claim against them. Defendants argue that plaintiff has not pled each element of its RICO claim with particularity, and the RICO claim should be dismissed. Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." The Court must accept still accept all well-pleaded allegations of the complaint as true, but Rule 9(b) requires that a plaintiff allege "who, what, when, where and how" the alleged fraud occurred. United States ex rel. Sikkenge v. Regence Bluecross Blueshield of Utah, 472 F.3d 702, 727 (10th Cir. 2006). The complaint identifies statements or communications made by specific defendants on March 23, 2009, April 15, 2009, June 3, 2009, and June 30, 2009, and provides sufficient detail to place defendants on notice of the content of the statements and the identity of the speaker. Dkt. # 1, at 9-10. The complaint also identifies the transactions for the six disputed chassis by date and purchase order number, and puts defendants on notice of the specific transactions at issue in this case. This would ordinarily satisfy plaintiff's burden to allege acts of fraud with particularity. However, this does not automatically mean that plaintiff has stated a RICO claim, because plaintiff must also allege each element of each predicate act supporting its RICO claim with particularity.

The Court has reviewed the complaint and finds that plaintiff has not stated a RICO claim against defendants. As previously noted, a plaintiff must allege that defendants "(1) participated in the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Tal, 453 F.3d at 1269. The complaint describes with particularity the conduct allegedly engaged in by defendants, and alleges that each defendant, individually and in conspiracy with each other, participated in the alleged conduct giving rise to a RICO claim. Concerning the second element, an "enterprise" is defined as "any individual, partnership, corporation, association, or other legal entity . . . ." 18 U.S.C. § 1961(4). The complaint states that Guardian is a corporation and this is sufficient to allege the second element of a RICO claim.

To properly allege the third and fourth elements of a RICO claim, a plaintiff must allege with particularity the commission of at least two predicate acts identified in § 1961. Deck v. Engineered Laminates, 349 F.3d 1253, 1257 (10th Cir. 2003). In this case, plaintiff alleges that the acts described in the complaint constitute mail fraud, wire fraud, and monetary transactions involving criminally derived property.[4] The elements of mail fraud under 18 U.S.C. § 1341 are "(1) a scheme or artifice to defraud or obtain property by means of false or fraudulent pretenses, representations, or promises, (2) an intent to defraud, and (3) use of the mails to execute the scheme." United States v. Welch, 327 F.3d 1081, 1104 (10th Cir. 2003). The first two elements for wire fraud under 18 U.S.C. § 1343 are identical, and the difference between mail and wire fraud is that wire fraud involves the use of "interstate wire or radio communications to execute the scheme," while mail

---

[4] Plaintiff also alleges that defendants' actions were an attempt to defraud a financial institution in violation of 18 U.S.C. § 1344. Defendants argue, and the Court agrees, that any such claim belongs to the allegedly injured financial institution and cannot be used by plaintiff as a basis for a RICO claim. See Dkt. # 16-2, at 11-12.

fraud involves the use of the United States Postal Service or an interstate mail carrier. Id. The complaint gives sufficient notice of the alleged fraudulent statements by defendants and alleges that the statements were made as part of a scheme to induce plaintiff to continue business relations with Guardian, even though Guardian had no intention of paying for the chassis. See Dkt. # 1, at 11 ("The series of misrepresentations listed above were made by Agnew, Brown and Sowell to Speedway with the intent that Speedway rely on these misrepresentations so that . . . Speedway would continue to sell Guardian additional chassis to keep the fraudulent scheme going."). The complaint generally alleges that Guardian used the United States Postal Service to convey certain statements to plaintiff, but this element of mail fraud is not pled with particularity. See Dkt. # 1, at 13. The complaint also does not allege the elements of an offense under 18 U.S.C. § 1957 with particularity. To state an offense under § 1957, plaintiff must allege with particularity that defendants "(1) engaged or attempted to engage, (2) in a monetary transaction, (3) in criminally derived property, (4) knowing that the property is derived from unlawful activity, and (5) that the property is, in fact, derived from specified unlawful activity." United States v. Baum, 555 F.3d 1129, 1131 (10th Cir. 2009) (quoting United States v. Lake, 472 F.3d 1247, 1260 (10th Cir. 2007)). The complaint makes no attempt to allege these elements with particularity and the Court cannot treat the alleged violation of § 1957 as a predicate act for a RICO claim. While it is possible that the complaint may allege wire fraud with particularity, this is only one predicate act and is not enough to show a pattern of racketeering activity. Each element of each predicate act of racketeering must be alleged with particularity under Rule 9(b) due to the "threat of treble damages and injury to reputation" that can ensue from a RICO claim. Farlow v. Peat, Marwick, Mitchell & Co., 956 F.2d 982, 989 (10th Cir. 1992) (quoting Cayman Exploration Corp., 873 F.2d at 1362).

Plaintiff has not pled each element of at least two predicate acts with particularity and, at most, the Court finds that plaintiff has alleged one predicate act with particularity.

Thus, plaintiff has not alleged a RICO claim against defendants. However, it is possible that plaintiff could amend its complaint to allege a RICO claim with the necessary particularity, and the Court will provide plaintiff an opportunity to file an amended complaint alleging predicate acts with particularity as required by Rule 9(b).

**IT IS THEREFORE ORDERED** that Guardian Emergency Vehicles, Inc., J. Kennith Brown, and James Agnew's Motion to Dismiss, or in the Alternative, Motion to Transfer (Dkt. # 16) is **granted in part** and **denied in part**: plaintiff's RICO claim against Guardian, Brown, Agnew and Sowell (First Claim for Relief) is dismissed; however, defendants' motion to dismiss for improper venue or to transfer venue is denied.

**IT IS FURTHER ORDERED** that plaintiff may file an amended complaint realleging a RICO claim against Guardian, Brown, Agnew, and Sowell no later than **October 7, 2009**.

**DATED** this 24th day of September, 2009.

                                                CLAIRE V. EAGAN, CHIEF JUDGE
                                                UNITED STATES DISTRICT COURT