UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

SAI BROKEN ARROW C, LLC, d/b/a )
Speedway Chevrolet, )
 )
          Plaintiff, )
 )
v. ) Case No. 09-CV-0455-CVE-FHM
 )
GUARDIAN EMERGENCY VEHICLES, INC., )
et al., )
 )
          Defendants. )

**OPINION AND ORDER**

Now before the Court is defendants' Guardian Emergency Vehicles, Inc., J. Kennith Brown, and James Agnew's Partial Motion to Dismiss Plaintiff's Second Amended Complaint, or in the Alternative, Motion to Strike (Dkt. # 39). Defendants J. Kennith Brown and James Agnew ask the Court to dismiss the claims of plaintiff SAI Broken Arrow C, LLC d/b/a Speedway Chevrolet (Speedway) under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. (RICO) against them.

**I.**

Speedway sells vehicle chassis to "upfitters" who modify the vehicle chassis for various purposes for resale to an end purchaser. Guardian Emergency Vehicles Inc. (Guardian) purchases vehicle chassis from Speedway and uses the chassis to build custom ambulance bodies for its customers. Speedway alleges that the process of ordering a vehicle chassis begins when Guardian submits a purchase order. Speedway places an order with a "first stage" manufacturer, such as General Motors Corporation (General Motors), for a vehicle chassis and the chassis is shipped directly to the upfitter. General Motors issues a first stage manufacturer's certificate of origin

(MCO) to Speedway, and Speedway is considered to be the owner of the chassis until it delivers the first stage MCO to the upfitter. Speedway signs over and delivers the first stage MCO to the upfitter after the upfitter pays Speedway for the chassis. The upfitter issues a second stage MCO to the end purchaser after it completes its work on the vehicle chassis. Speedway alleges that the upfitter must sign over and deliver both MCOs to the end purchaser, and the end purchaser must present both MCOs to the appropriate state agency to obtain a vehicle title.

Speedway alleges that it has sold 30 vehicle chassis to Guardian since June 2007, but Guardian has not paid for six of the chassis. Speedway alleges that it contacted Guardian and demanded payment for the six chassis. Agnew, Guardian's Vice President of Sales and Operations Manager, represented that Guardian had not completed its work on the six chassis and that it would pay for the chassis when the work was finished, but Speedway alleges that the Agnew's statements were false. Speedway alleges that Guardian had already sold the six chassis to various end purchasers and received payment for the chassis. Dkt. # 37, at 15. On March 23, 2009, Agnew sent an e-mail to Speedway stating that he had obtained financing from a "floor plan lender" to secure Guardian's inventory and that he had bought out Guardian's other owners, and payment for the six chassis would be forthcoming. By April 15, 2009, Guardian had not paid for the six chassis and Speedway inquired about the status of the chassis. Agnew sent an e-mail to Speedway stating that two of the chassis were in Guardian's possession and Guardian was still working on the chassis. In June 2009, Agnew contacted Speedway and requested copies of the first stage MCOs for the six chassis, and claimed that the "floor plan lender" requested the copies. Speedway agreed to send Guardian copies of the first stage MCOs, but also demanded that Guardian immediately mail a check for the chassis. Agnew faxed Speedway a copy of a check for the full amount owed, but Speedway

2

alleges that Agnew never mailed the check to Speedway. In May or June 2009, Brown, Guardian's President and Chief Financial Officer, assured Speedway that a financing agreement was being put together and he later told Speedway that financing for the six chassis had been secured. He also stated that Guardian would promptly pay Speedway for two of the chassis upon which work was almost finished. Speedway held a conference call with Brown and Agnew on June 30, 2009, and Brown and Agnew both stated that Guardian had not finished manufacturing the bodies on certain chassis.

Speedway attempted to repossess all six chassis for which Guardian had not paid, but Speedway alleges that none of the chassis were on Guardian's property. Speedway ran "Carfax" reports for each of the chassis and discovered that Guardian had already sold five of the six chassis to end purchasers. Speedway alleges that Guardian misrepresented the status of work on and financing for the chassis to discourage Speedway from investigating Guardian's conduct. Speedway further alleges that Guardian sold these six chassis to end purchasers without a first stage MCO, but the end purchasers were still able to obtain title from various state titling agencies. According to Speedway, the end purchasers knew that Guardian did not have the authority to transfer ownership of the vehicles but were able to obtain title to the vehicles with "either a second-stage MCO only or with the second-stage MCO in combination with a counterfeit first-stage MCO." Dkt. # 37, at 19.

Speedway claims that the actions of Agnew, Brown, Guardian, the end purchasers and the state titling agencies were part of a conspiracy to defraud Speedway, and has filed a civil RICO claim against Agnew and Brown, among others. Speedway claims that Guardian and its owners, Agnew and Brown, used the Unites States Postal Service or another interstate mail carrier when

3

communicating with the end purchasers, and these acts constituted mail fraud in violation of 18 U.S.C. § 1341. Speedway alleges that Agnew and Brown's interstate communications with Speedway were made with knowledge that their statements were false, and Agnew and Brown each engaged in wire fraud in violation of 18 U.S.C. § 1343. Finally, Speedway claims that Agnew and Brown engaged in monetary transactions in excess of $10,000 with property derived from unlawful activity in violation of 18 U.S.C. § 1957.

Speedway filed its original complaint (Dkt. # 1) on July 16, 2009 alleging: a RICO claim against Agnew, Brown, and Don Sowell,[1] an officer or employee of Guardian; a breach of contract claim against Guardian; and a conversion claim against Guardian, Agnew, Brown, and Sowell. Speedway also asserted a RICO claim against the Mayes Emergency Services Trust Authority and other unknown end purchasers, and a negligence claim against unidentified state titling agencies who issued certificates of title to the end purchasers. Defendants Guardian, Agnew, and Brown filed a motion to dismiss or transfer venue (Dkt. # 16). They argued that this Court did not have venue over the case and, even if venue were proper, the case should be transferred to the Northern District of Alabama for the convenience of the parties and witnesses. Agnew and Brown also argued that the complaint did not state a RICO claim against them. The Court found that venue was proper in the Northern District of Oklahoma, and denied defendants' motion to dismiss for improper venue and the alternative motion to transfer venue to another district. Dkt. # 29. However, the Court found that plaintiff had not alleged a RICO claim against these defendants with particularity, and dismissed this claim with leave to file an amended complaint. Id. at 9-15. Plaintiff filed an amended

---

[1] In the second amended complaint Sowell is correctly identified as Donald Sauer. However, Don Sowell is still identified as a separate party in the caption of the second amended complaint.

4

complaint (Dkt. # 32) realleging its claims with greater particularity, and Agnew and Brown filed a motion to dismiss (Dkt. # 33) the RICO claims against them. Speedway requested leave to file a second amended complaint joining parties that whose identities were previously unknown. Dkt. # 35. The Court granted Speedway's motion to amend, and Speedway filed a second amended complaint identifying all defendants and realleging all claims in the original complaint.[2] Agnew and Brown have filed a motion to dismiss the RICO claims against them for failure to state a claim.[3]

## II.

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 562. Although decided within an antitrust context, the Supreme Court recently held that Twombly "expounded the pleading standard for all civil actions." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009). For the

---

[2] The caption of the second amended complaint includes John Doe purchasers and tag agencies as parties, but plaintiff states that it has included all actual defendants as parties in the second amended complaint. Dkt. # 35, at 2.

[3] Defendants' motion to dismiss the second amended complaint repeatedly refers to the amended complaint and references paragraphs as numbered in the amended complaint. However, it is sufficiently clear what paragraphs of the second amended complaint defendants intended to reference, and the Court will refer to the appropriate paragraphs of the second amended complaint when reviewing defendant's motion to dismiss.

5

purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to claimant. Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee County Bd. Of County Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

### III.

Agnew and Brown argue that Speedway has not alleged that they engaged in a pattern of racketeering activity with sufficient particularity to satisfy the pleading requirements of Fed. R. Civ. P. 9(b). They also argue that Guardian's dealings with end purchasers did not involve any allegedly illegal conduct directed at Speedway and were otherwise lawful, and Speedway has not alleged that Agnew and Brown engaged in the predicate act of money laundering. Speedway responds that it has alleged a pattern of racketeering act with particularity as required by Rule 9(b) and, even if the Court finds that Speedway has alleged only the predicate act of wire fraud, Speedway has alleged multiple acts of wire fraud and this is sufficient to allege a pattern of racketeering activity.

Under 18 U.S.C. § 1962(c), it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." To survive a motion to dismiss, the Tenth Circuit has held that a plaintiff must allege that "the defendants (1) participated in the conduct (2) of an enterprise (3)

6

through a pattern (4) of racketeering activity." Tal v. Hogan, 453 F.3d 1244, 1269 (10th Cir. 2006). To have standing to allege a RICO claim, a plaintiff must have been "injured in his business or property by the conduct constituting the violation." Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985). Alleged predicate acts based on fraud must be pled with particularity under Rule 9(b). Cayman Exploration Corp. v. United Gas Pipe Line Co., 873 F.2d 1357, 1362 (10th Cir. 1989). Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." The Court must accept still accept all well-pleaded allegations of the complaint as true, but Rule 9(b) requires that a plaintiff allege "who, what, when, where and how" the alleged fraud occurred. United States ex rel. Sikkenge v. Regence Bluecross Blueshield of Utah, 472 F.3d 702, 727 (10th Cir. 2006). To properly allege the third and fourth elements of a RICO claim, a plaintiff must allege with particularity the commission of at least two predicate acts identified in § 1961. Deck v. Engineered Laminates, 349 F.3d 1253, 1257 (10th Cir. 2003).

In this case, plaintiff alleges that the acts described in the complaint constitute mail fraud, wire fraud, and monetary transactions involving criminally derived property. The elements of mail fraud under 18 U.S.C. § 1341 are "(1) a scheme or artifice to defraud or obtain property by means of false or fraudulent pretenses, representations, or promises, (2) an intent to defraud, and (3) use of the mails to execute the scheme." United States v. Welch, 327 F.3d 1081, 1104 (10th Cir. 2003). The first two elements for wire fraud under 18 U.S.C. § 1343 are identical, and the difference between mail and wire fraud is that wire fraud involves the use of "interstate wire or radio communications to execute the scheme," while mail fraud involves the use of the United States Postal Service or an interstate mail carrier. Id.

7

The second amended complaint adequately alleges that Agnew and Brown engaged in wire fraud, and plaintiff may rely on wire fraud as a predicate act for a RICO claim. The second amended complaint alleges that Agnew and Brown attempted to defraud plaintiff by ordering vehicle chassis without paying for them, and made numerous statements as part of a scheme to keep plaintiff from investigating their conduct. Agnew and Brown are on notice of specific statements they allegedly made on March 23, 2009, April 15, 2009, and June 3, 2009, as well as at least one other representation by Brown sometime during May or June 2009. Dkt. # 37, at 16-17. Plaintiff also alleges that Agnew and Brown made material misrepresentations about the status of vehicle chassis and financing to encourage plaintiff to continue its relationship with Guardian, and Agnew's and Brown's statements were part of a long-term scheme, rather than just an isolated event. Hall v. Witteman, 584 F.3d 859 (10th Cir. 2009) (alleged predicate acts may be considered only if they are part of "continuing racketeering activity"). The statements were also made using e-mails or phones across state lines, and interstate communications were a necessary part of the alleged scheme to defraud plaintiff.

Plaintiff also alleges that Agnew and Brown used the United State Postal Service or a commercial interstate mail carrier to carry out their scheme to defraud plaintiff. Agnew and Brown argue that they were using the mail to carry out Guardian's "normal business," and plaintiff has not alleged that any mailing contained a fraudulent statement that would by itself constitute mail fraud against plaintiff. However, it is not necessary for the mailing itself to contain a fraudulent statement or even for the use of the mail to be an essential element of the fraudulent scheme. United States v. Parker, 553 F.3d 1309, 1319 (10th Cir. 2009) (the defendant induced a customer to send a check to the defendant through the United States Mail and this was a "step in the plot," and the defendant's

8

conviction for mail fraud was affirmed, even though the mailing itself was not an essential element of the fraudulent scheme). As noted above, the second amended complaint alleges that Agnew and Brown engaged in a scheme to defraud plaintiff by encouraging plaintiff to continue a business relationship with Guardian with no intent to pay for plaintiff's services. Plaintiff alleges that Guardian sent second stage MCOs, and possibly fraudulent first stage MCOs, through the interstate mail system, and this was a "step in the plot" of Agnew's and Brown's alleged scheme. The fact that the mailings themselves may have been an ordinary part of Guardian's business does not prevent plaintiff from alleging that Agnew and Brown engaged in the predicate act of mail fraud. The second amended complaint also alleges upon information and belief the identity of the parties sending the mail, the contents of the mailing, and an approximate range of dates when the mailing would have been sent. Dkt. # 37, at 9. This is sufficient to give defendants notice of the particulars of the alleged mailings and the identity of the parties involved, especially considering that plaintiff was not a party to the alleged mailings. See Scheidt v. Klein, 956 F.2d 963 (10th Cir. 1992) ("Allegations of fraud may be based on information and belief when the facts in question are peculiarly within the opposing party's knowledge and the complaint sets forth the factual basis for the plaintiff's belief."). Plaintiff has complied with the requirement of Rule 9(b) to allege the predicate act of mail fraud with particularity.

Plaintiff also alleges that Agnew and Brown engaged in monetary transactions with criminally derived property in violation of 18 U.S.C. § 1957. Agnew and Brown argue that Guardian's receipt of money from the end purchaser for a completed vehicle was a necessary and lawful part of Guardian's business and, even if Guardian still owed money to plaintiff for six chassis, the proceeds or part of the proceeds rightfully belonged to Guardian. They argue that the

9

money was "lawfully generated" and cannot be used to support the predicate act of engaging in monetary transactions with criminally derived property. However, the second amended complaint alleges that the vehicle chassis still belonged to plaintiff when Guardian sold the completed vehicles to the end purchasers, and Guardian was engaging in a monetary transaction with property fraudulently obtained from plaintiff. Even if Guardian ordinarily had the right to retain proceeds from the sale of a completed chassis, plaintiff alleges that Guardian was selling chassis that belonged to plaintiff and was keeping all of the money. Mail fraud and wire fraud constitute "specified unlawful activity" as that term is used in § 1957. United States v. Baum, 555 F.3d 1129, 1131 (10th Cir. 2009); United States v. Lowder, 5 F.3d 467, 473 (10th Cir. 1993). Defendants overlook plaintiff's allegations that the vehicle chassis still belonged to plaintiff at the time Guardian sold the completed vehicles to the end purchasers and, even if the Guardian may have been entitled to part of the proceeds, the second amended complaint sufficiently alleges that Guardian engaged in transactions with criminally derived property. See United States v. Allen, 129 F.3d 1159 (10th Cir. 1997) (noting that § 1957 reaches a broad range of criminal activity because it prohibits even "open, above-board transaction[s]" using criminally derived property).

The alleged predicate acts of wire fraud, mail fraud, and monetary transactions with criminally derived property occurred over a period of 18 months and are sufficient to establish a pattern of racketeering activity at the pleading stage. The second amended complaint alleges with sufficient particularity that Agnew and Brown engaged in a scheme to defraud plaintiff, and puts Agnew and Brown on notice of the specific acts upon which plaintiff will rely as predicate acts for its RICO claims. Plaintiff has carried its burden to allege plausible RICO claims with enough particularity to satisfy Rule 9(b), and nothing more is required at the pleading stage.

Finally, Agnew and Brown ask the Court to strike paragraph 62 of the second amended complaint, because the fraudulent acts alleged in paragraph 62 have no relationship to plaintiff's claims against Agnew and Brown. Under Fed. R. Civ. P. 12(f), a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Striking a pleading or part of a pleading is a "drastic remedy and because a motion to strike may often be made as a dilatory tactic, motions to strike under Rule 12(f) generally are disfavored." Burget v. Capital West Sec., Inc., 2009 WL 4807619, *1 (W.D. Okla. Dec. 8, 2009). "Allegations will not be stricken as immaterial under this rule unless they have no possible bearing on the controversy." The Bd. of County Comm'rs of the County of La Plata, Colorado v. Brown Group Retail, Inc., 2009 WL 2514094, *2 (D. Colo. Aug. 14, 2009). In paragraph 62 of the second amended complaint, plaintiff alleges that Agnew and Brown have engaged in similar schemes involving other automotive dealers and criminal charges have been or may be filed against both defendants. Dkt. # 37, at 22. Agnew and Brown assert that the allegations of paragraph 62 do not provide an independent basis for recovery against them and should be stricken. While paragraph 62 does not allege any acts that would serve as an independent basis for recovery, it is relevant to support plaintiff's allegations that Agnew and Brown acted with intent to defraud plaintiff. Thus, paragraph 62 does not contain allegations that are wholly irrelevant or immaterial to plaintiff's claims, and Agnew's and Brown's motion to strike should be denied.

**IT IS THEREFORE ORDERED** that defendants' Guardian Emergency Vehicles, Inc., J. Kenneth Brown, and James Agnew's Partial Motion to Dismiss Plaintiff's Second Amended Complaint, or in the Alternative, Motion to Strike (Dkt. # 39) is **denied**.

**IT IS FURTHER ORDERED** that plaintiff is directed to correct the case caption to remove Donald Sowell and John Doe purchasers and tag agencies as parties.

**DATED** this 8th day of January, 2010.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT